**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
Docket No. 24-CR-239 (JRT)

UNITED STATES OF AMERICA,

Plaintiff,

vs.

NATHAN MATHIAS SUGHROUE,

Defendant.

**DEFENDANT'S POSITION REGARDING SENTENCING**

The Defendant, Nathan Mathias Sughroue, through his attorneys Christina Zauhar and Eric J. Nelson, Halberg Criminal Defense, respectfully moves this to Court recognize the policies embodied in the Federal Sentencing Guidelines, as well as those enumerated at 18 U.S.C. § 3553(a), to sentence Mr. Sughroue to not more than 87 months in prison, with credit for the time he has already served in relation to this matter, followed by a supervised release period of not more than three years. Accordingly, the Defense submits the following.

## I. PROCEDURAL FACTS AND PRESENTENCE INVESTIGATION

On August 27, 2024, Nathan Mathias Sughroue was charged with two instances of carjacking in a two-count indictment alleging violations of 18 U.S.C. § 2119. (D.N. 1). A superseding indictment was filed on September 11, 2024, charging Mr. Sughroue with: (1) carjacking, in violation of 18 U.S.C. § 2119; and (2) carjacking

resulting in serious bodily injury, 18 U.S.C. § 2119(2). (D.N. 16). On January 27, 2025, Mr. Sughroue pleaded guilty as charged to both counts of the superseding indictment. (D.N. 49). A final presentence investigation report (PSR) was prepared and filed on April 16, 2025. (D.N. 54). The PSR calculated Mr. Sughroue's criminal history score to be 0, which places him in criminal history category I. (PSR at ¶ 45).

The parties agree that count I, carjacking, in violation of 18 U.S.C. § 2119, carries a base offense level of twenty (20). (PSR at ¶ 18); *see* U.S.S.G. § 2B3.1. The parties also agree that a three-level enhancement under U.S.S.G. § 2B3.1(b)(2)(E) is appropriate because a dangerous weapon was brandished during commission of the offense. (PSR at ¶ 19). The parties further agree that a two-level enhancement should be applied, pursuant to U.S.S.G. § 2B3.1(b)(5), because the offense involved carjacking. (PSR at ¶ 20). The parties agree that the total adjusted offense level for count I is, therefore, twenty-five (25). (PSR at ¶ 24)

The parties agree that count II, carjacking resulting in serious bodily injury, in violation of 18 U.S.C. § 2119(2), carries a base offense level of twenty (20). (PSR at ¶ 25); *see* U.S.S.G. § 2B3.1. The parties also agree that a four-level enhancement under U.S.S.G. § 2B3.1(b)(2)(D) is appropriate because a dangerous weapon was used during commission of the offense, and an additional four-level enhancement applies because the victim of the offense sustained serious bodily injury. U.S.S.G. § 2B3.1(b)(3)(B); (PSR at ¶¶ 26, 27). The parties further agree that a two-level

enhancement should be applied, pursuant to U.S.S.G. § 2B3.1(b)(5), because the offense involved carjacking. (PSR at ¶ 28). An additional one-level enhancement should be applied, pursuant to U.S.S.G. § 2B3.1(b)(7)(A), because the victim suffered financial losses in an amount between $20,000 and $95,000 as a result of the offense. (PSR at ¶ 29). The parties agree that the total adjusted offense level for count II is, therefore, thirty-one (31). (PSR at ¶ 33).

Because multiple counts were involved, the parties agree that an additional one-level (1.5, rounded down to the whole number) enhancement is added to the highest offense level. (PSR at ¶¶ 34–36). This results in a combined adjusted offense level of thirty-two (32). (PSR at ¶ 37).

Pursuant to U.S.S.G. § 3E1.1(a)–(b), a three-level reduction for Mr. Sughroue's acceptance of responsibility (-2) and assistance in investigating this matter (-1) is applicable. (PSR at ¶ 39). The resulting total offense level is, therefore, twenty-nine (29). (PSR at ¶ 40). The parties further agree that any sentence give should be adjusted to reflect credit for Mr. Sughroue's time in custody dating back to June 16, 2024, pursuant to U.S.S.G. § 5G1.3(b)(1).[1] (D.N. 49 at 9).

---

[1] Should the Court disagree that custody credit dating back to June 16, 2024, is appropriate, Mr. Sughroue moves for a downward variance of twelve months, for a total sentence of not more than 75 months of imprisonment. Time served in state custody for the same offense to which he pleaded guilty here is a mitigating factor this Court may consider when crafting its sentence. *See Smith v. Texas*, 543 U.S. 37, 46 (2004) (The Eighth Amendment requires a sentencing fact-finder to give "full consideration and full effect" to any mitigating factor, even if the mitigating factor

With a total offense level of twenty-nine and a criminal history category of I, the Sentencing Guidelines range for Mr. Sughroue is 87 to 108 months of imprisonment. U.S.S.G. § 5A. The Defense submits that, pursuant to 18 U.S.C. § 3553(a), the need to avoid disparities in sentencing, and in light of the considerable mitigating circumstances in this case, the Court should sentence Mr. Sughroue to not more than 87 months of imprisonment, less credit for time he has already served in custody. Such a sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing. *See* 18 U.S.C. § 3553(a)(2); *Kimbrough v. United States*, 552 U.S. 85, 101 (2007).

## II. APPLICABLE SENTENCING PRINCIPLES AND CONSIDERATIONS

The longstanding principle that "the punishment should fit the offender and not merely the crime" is codified at 18 U.S.C. § 3661. Under that provision, "[n]o limitation shall be placed on the information" that a sentencing court may take into account when "considering the [defendant's] background, character and conduct." *See Williams v. New York*, 337 U.S. 241, 247 (1949). This principle is also expressly incorporated in the United States Sentencing Guidelines at section 1B1.4:

> In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the

---

does not bear a "nexus" to the crime itself. (quoting *Johnson v. Texas*, 509 U.S. 350, 796 (1993))

background, character and conduct of the defendant, unless otherwise prohibited by law.

Although a sentencing court must "give respectful consideration to the Guidelines… [it is permitted to] tailor the sentence in light of other statutory concerns as well." *Kimbrough*, 552 U.S. at 101 (referencing post-*Booker*[2] opinions which reiterate that the Federal Sentencing Guidelines are advisory only). "[T]he district court is free to make its own reasonable application of the [section] 3553(a) factors and to reject (after due consideration) the advice of the Guidelines." *Id.* at 113 (Scalia, J., concurring).

Thus, every federal sentencing case involves application of 18 U.S.C. § 3553(a), and this Court has no doubt seen and recited the relevant portions of that statute dozens, if not hundreds, of times. Nevertheless, it is worth emphasizing the fundamental mandate of the statute: The sentence imposed on a person must be "sufficient, but not greater than necessary" to comply with the purposes of sentencing. 18 U.S.C. § 3553(a).

To determine what sentence is sufficient, but not greater than necessary, the Court considers the sentencing factors set forth in section 3553(a), summarized as follows:

(1) the offense and the person being sentenced;

---

[2] *United States v. Booker*, 543 U.S. 220 (2005).

(2) the need for the sentence to provide just punishment, adequate deterrence, protection of the public, and appropriate treatment for the defendant;
(3) the kinds of sentences available;
(4) the Guidelines range for the defendant;
(5) pertinent policy statements of the Guidelines;
(6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar misconduct; and
(7) the need to provide restitution to any victims.

The applicable Guidelines range generally provides a starting point from which to begin the sentencing process because it encompasses many facets of the individual defendant, such as criminal history, the circumstances of the crime, and any relevant offense conduct.

**A. Guidelines range for the Defendant's offenses and sentencing data.**

The Guidelines range is determined by a defendant's criminal history and the calculated offense level. In this case, the Guidelines, among other factors, account for the elements of the offenses, including any injury or financial loss suffered by the victims. Here, Mr. Sughroue's guidelines range is 87 to 108 months of imprisonment. *See* section II, *supra*.

As the Supreme Court has explained, there are two reasons why it is generally fair to assume that the Guidelines reflect a rough approximation of sentences that "might achieve § 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338, 348 (2007). First, the original Sentencing Commission used an approach that began

"with an empirical examination of 10,000 presentence reports setting forth what judges had done in the past." *Id.* Second, the Commission can review and revise the Guidelines based on judicial feedback, through review of sentencing decisions, and by consultation with experts. *Id.* For these reasons, federal sentences are often imposed within the applicable guidelines range—and are routinely affirmed as "reasonable" on appeal. However, for many types of offenses, below-guidelines sentences are (or have become) the norm.[3]

In fashioning the "sufficient, but not greater than necessary" sentence for Mr. Sughroue, this Court may consider whether the Guidelines range exemplifies the Sentencing Commission's "exercise of its characteristic institutional role… to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108-09; *Rita*, 551 U.S. at 349-50. Here, Mr. Sughroue is asking for a sentence no longer than 87 months because of his lack of prior criminal history and the circumstances surrounding his offenses.

### B. The nature and circumstances of the offense, and the history and characteristics of the Defendant.

[3] *See, e.g.,* PSR at ¶ 82, "Between fiscal years 2020 and 2024, there were 41 defendants whose primary guideline was §2B3.1, with a Final Offense Level of 29 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 40 defendants (98%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 75 months and the median length of imprisonment imposed was 82 months."

In sentencing Mr. Sughroue, this Court is required by law to impose a sentence that is "sufficient, but not greater than necessary" to comply with the sentencing goals enumerated in 18 U.S.C. § 3553(a). *Kimbrough*, 552 U.S. at 101 (quoting 18 U.S.C. § 3553(a)(2)). Those goals are: "[First,] to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; [second,] to afford adequate deterrence to criminal conduct; [third,] to protect the public from further crimes of the defendant; and [fourth,] to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2); *see also Kimbrough*, 552 U.S. at 101.

> The statute further provides that, in determining the appropriate sentence, the court should consider . . . 'the nature and circumstances of the offense,' 'the history and characteristics of the defendant,' 'the sentencing range established' by the Guidelines, 'any pertinent policy statement' issued by the Sentencing Commission pursuant to its statutory authority, and 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'

*Kimbrough*, 552 U.S. at 101 (internal citations omitted).

The Defense urges the Court, in crafting its "sufficient" sentence, not to view Mr. Sughroue solely in relation to the crime he committed and for which he has been convicted.

> It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes

> mitigate, sometimes magnify, the crime and the punishment to ensue.

*Gall v. United States*, 552 U.S. 38, 52 (2007) (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)). It is the position of the Defense that Mr. Sughroue's personal characteristics, as well as the circumstances surrounding his offense—before and after—should mitigate "the punishment to ensue."

*i. Mr. Sughroue's personal characteristics*

The PSR contains a detailed and accurate description of Mr. Sughroue's personal background, so the Defense will not offer a lengthy recitation of the majority of the facts contained therein. (*See* PSR at ¶¶ 50–76). However, some relevant highlights are important to understanding Mr. Sughroue and his offenses. He is currently thirty-one years old. His father died in 2004, when Mr. Sughroue was only eleven. (PSR at ¶ 50). His father's death "deeply impacted" Mr. Sughroue, and his mother took him to see a counselor as a result. (*Id.*). Mr. Sughroue's father suffered from significant substance abuse and mental health disorders prior to his death. (*Id.*).

Mr. Sughroue also suffers from major depressive disorder and generalized anxiety disorder, but they were undiagnosed and untreated until he was incarcerated for the instant offenses. (PSR at ¶ 59). Despite his relatively young age, Mr. Sughroue also has a long history of substance abuse and was a regular user of methamphetamine until the date of the instant offenses. (PSR at ¶¶ 63–66). His

mother "realized something was 'off' about him but was unaware of the root cause." (PSR at ¶ 54).

> Once she learned of his substance use and his delusional episodes, she and the defendant's sister offered their concerns, and he subsequently agreed to enter a substance use disorder program. As reflected in investigative materials, the family members were traveling to take the defendant to treatment prior to the onset of the offense.

(*Id.*). On the way to treatment, Mr. Sughroue, who had been going through withdrawal from methamphetamine, panicked and fled, and committed the instant offenses in his attempt to do so. (*See* PSR at ¶¶ 9, 16). Mr. Sughroue has little memory of what happened during the offenses. (*Id.* at ¶ 16).

Mr. Sughroue is not the average offender. Prior to the offenses in question, Mr. Sughroue led a hard-working, law-abiding life, and had experienced no real legal issues until the point of his arrest. He has no prior criminal history apart from traffic violations. Nevertheless, Mr. Sughroue–uncharacteristically–has committed serious crimes. He quickly pleaded guilty to his offenses, and his remorse will be made apparent to this Court. Mr. Sughroue is ready to face the Court's judgment and continue to atone for his wrongdoing.

Throughout these proceedings, Mr. Sughroue has been very respectful to the judicial process, the Court, and the Government. While incarcerated, he has received treatment for his mental health issues and enrolled in a substance abuse treatment program. (PSR at ¶¶ 59, 66).

*ii. Mr. Sughroue's offenses*

On January 27, 2025, Mr. Sughroue pleaded guilty as charged to carjacking, in violation of 18 U.S.C. § 2119, and carjacking resulting in serious bodily injury, 18 U.S.C. § 2119(2). Both offenses occurred while Mr. Sughroue was under the influence of a controlled substance and are described in greater detail in the presentence investigation report. (*See* PSR at ¶¶ 8 through 12).

**C. The need for the sentence imposed.**

Under 18 U.S.C. § 3553(a)(2), "the need for the sentence imposed" is divided into four subdivisions for the Court to consider: (1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (2) to afford adequate deterrence to criminal conduct; (3) to protect the public from further crimes of the defendant; and (4) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. Each factor is addressed below.

*i. The need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense*

Just punishment does not mean the longest sentence possible; it means a sentence that is fitting for the crime Mr. Sughroue committed in light of who Mr. Sughroue is as a person. Just as importantly, it means a sentence that will come closest to accomplishing the many intersecting goals that are foundational to our criminal justice system. The need for retribution is measured by the degree of

"blameworthiness," which "is generally assessed according to two kinds of elements: the nature and seriousness of the harm caused or threatened by the crime; and the offender's degree of culpability in committing the crime, in particular, his degree of intent (*mens rea*), motives, role in the offense, and mental illness or other diminished capacity." Richard S. Frase, "Excessive Prison Sentences, Punishment Goals, and the Eighth Amendment: 'Proportionality' Relative to What?," 89 *Minn. L. Rev.* 571, 590 (Feb. 2005).

No one argues that Mr. Sughroue's crime was insignificant or deserving of a sentence that could easily be mistaken as "meaningless." However, a sentence of not more than 87 months of federal imprisonment, combined with whatever punishment he will receive in the Minnesota state case related to the same conduct, is more than sufficient to satisfy the retributive aspect of sentencing. "Just" punishment is a holistic concept, and in order to accurately categorize a punishment as "just," this Court cannot overlook the collateral impact of Mr. Sughroue's convictions and sentences on Mr. Sughroue, as well as his family.

In addition to "the need to provide just punishment for the offense," another aim under of sentencing under 18 U.S.C. § 3553(a)(2) is to promote respect for the law. Mr. Sughroue, arguably, spent his entire career attempting to promote respect for the law. Mr. Sughroue's offenses occurred when he was suffering from an addiction that formed the basis of his criminality—an addiction for which he has

since sought help. He feels great remorse for what he has done, and pleaded guilty quickly to his offenses, demonstrating a respect for the law which he has otherwise shown throughout his life. A federal sentence of more than 87 months would do nothing more to promote respect for the law—rather, it would merely be cumulative retribution.

This case involves a younger, first-time offender with *no prior criminal record*, who committed his crimes when he was experiencing withdrawal symptoms from methamphetamine. (PSR at ¶ 16). A sentence of more than 87 months' imprisonment plus supervised release would reflect the seriousness of the offense, promote respect for the law, and serve as a just punishment for Mr. Sughroue's actions.

*ii. The need to afford adequate deterrence to criminal conduct*

The need to afford adequate deterrence to criminal conduct contemplates not only deterring the Defendant from committing future crimes but deterring others from committing similar offenses. However, research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, "Purposes and Functions of Sentencing," *34 Crime & Just.* 1, 28 (2006). "Three National Academy of Science panels . . . reached that conclusion, as has every major survey of the evidence." *Id.*

Findings from the Institute of Criminology at Cambridge University bolster such conclusions regarding the notion of general deterrence. *See* Andrew von Hirsch *et al.*, *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999).[4] The report, commissioned by the British Home Office, examined criminal penalties in the United States, as well as in several European countries. *Id*. at 1. It examined the effects of changes to both the certainty and the severity of punishment. *Id*. While significant correlations were found between the certainty of punishment and crime rates, the "***correlations between sentence severity and crime rates… were not sufficient to achieve statistical significance.***" *Id.* at 2 (emphasis added). The report concluded that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences is capable of enhancing deterrent effects." *Id*. at 1. In fact, according to "the best available evidence…, prisons do not reduce recidivism more than noncustodial sanctions." Francis T. Cullen *et al.,* "Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science," 91 *Prison J.* 48S, 50S-51S (2011). Hence, a sentence of no more than 87 months is more than sufficient to serve the purpose of deterring future crime.

*iii. The need to protect the public from further crimes of the defendant*

In light of Mr. Sughroue's minimal criminal history, his chances for

[4] Summary available from U.S. DOJ, Office of Justice Programs, https://www.ojp.gov/library/abstracts/criminal-deterrence-and-sentence-severity-analysis-recent-research, accessed Apr. 28, 2025.

recidivism are quite low. The up-to 87 months in prison that he will serve, combined with reputational and financial losses, will certainly deter him from engaging in any similar behavior in the future. In fact, given the circumstances of his crime, his conviction, alone, combined with treatment, will help to *prevent* Mr. Sughroue from ever being a position to commit such a crime again. Mr. Sughroue has owned up to his offense, admitted his wrongdoing and will spend the next several years paying his debt to society. Moreover, upon release, he will be subject to stringent supervisory conditions that will further deter any sort of similar conduct. A sentence of up to 87 months in prison is more than sufficient to protect the public from Mr. Sughroue.

*iv. The need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner*

Mr. Sughroue has a high school diploma, a community college certificate, and additional vocational training through his employer. While incarcerated for the instant offense, he has continued his education through virtual programming. Thus, an opportunity for additional education or vocational training may be welcome. Moreover, given his substance abuse and mental health conditions, Mr. Sughroue will likely need ongoing care. As he ages, the most effective way to address Mr. Sughroue's vocational and medical needs will be outside the prison setting.

**D. A sentence of 87 months' imprisonment is commensurate with sentences imposed upon other, similarly-situated defendants.**

The Congressional mandate to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct should guide this Court in fashioning an appropriate sentence for Mr. Sughroue. 18 U.S.C. § 3553(a)(6); *see Kimbrough*, 552 U.S. at 101. The push toward sentencing uniformity "does not consist simply of similar sentences for those convicted of violations of the same statute [but] consists, more importantly, of ***similar relationships between sentences and real conduct***." *Booker*, 543 U.S. at 253-54 (emphasis added).

The Eighth Circuit has limited its interpretation of § 3553(a)(6) to disparities among defendants who have committed similar offenses and who have been sentenced by the ***same court***. *See United States v. Harvey,* 890 F.3d 1130, 1133 (8th Cir. 2018) ("We have declined to require that a district judge 'must compare and contrast the defendant under consideration with a similar offender who has been sentenced by another federal judge.'") (quoting *United States v. Barron,* 558 F.3d 866, 860 (8th Cir. 2009)); *see also United States v. Soliz,* 857 F.3d 781, 783 (8th Cir. 2017) ("The sentencing practices of one district court are not a reference point for other courts"). Mr. Sughroue's particular combination of legal circumstances is somewhat unusual, as relatively few offenders have been sentenced under this particular guideline. As such, national sentencing statistics may assist the Court in crafting its sentence in this matter.

In fact, most circuits interpret section 3553(a)(6) as requiring a national comparison of defendants and sentences. The Eighth Circuit's interpretation of section 3553(a)(6) is an outlier that stands in stark contrast to the manner in which the statute is construed by a majority of other circuits. For example, the Sixth Circuit has held that:

> '[s]ubsection 3553(a)(6) is concerned with *national* disparities among the many defendants with similar criminal backgrounds convicted of similar criminal conduct…' This factor is designed to 'ensure nationally uniform sentences among like offenders.'

*United States v. Houston,* 529 F.3d 743, 752 (6th Cir. 2008) (quoting *United States v. Simmons,* 501 F.3d 620, 625 (6th Cir. 2007)) (emphasis in original).

The Eleventh Circuit has also acknowledged that "§ 3553(a)(6) is focused primarily on nationwide sentencing disparities." *United States v. Ronga,* 682 Fed.Appx. 849, 859 (11th Cir. 2017). The First, Second, Third, Fifth, Seventh and Ninth Circuits have also concluded that national uniformity is the appropriate analysis under which to construe 18 U.S.C. § 3553(a)(6). *See, e.g. United States v. Saez*, 444 F.3d 15, 18 (1st Cir. 2004) (Congress's "aim was almost certainly a *national* uniformity focusing upon a common standard and looking to how *most* cases of the same kind were treated.") (emphasis in original); *United States v. Fernandez,* 443 F.3d 19, 31–32 (2d Cir.2006); *United States v. Douglas,* 885 F.3d 145, n. 6 (3rd Cir. 2018); *United States v. Candia,* 454 F.3d 468, 476 (5th Cir. 2006); *United States v. Pisman,* 443 F.3d 912, 916 (7th Cir. 2006); *United States v.*

*Paopao,* 736 Fed. Appx. 641 (9th Cir. 2018).

Here, the primary guideline on which Mr. Sughroue's sentence must be based is U.S.S.G. § 2B3.1. (PSR at ¶¶ 82). According to the PSR,

> Between fiscal years 2020 and 2024, there were 41 defendants whose primary guideline was §2B3.1, with a Final Offense Level of 29 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 40 defendants (98%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 75 months and the median length of imprisonment imposed was 82 months.

(*Id.*).

Thus, a sentence of up to 87 months in this case falls squarely in the heartland of the offense, and really, is above the sentence an average defendant with the same criminal history category as Mr. Sughroue would likely receive. It is also difficult to surmise whether such defendants were also facing concurrent state charges for the same criminal conduct.

Thus, even on a national level, it is difficult to compare Mr. Sughroue's circumstances with those of other defendants. Nevertheless, this Court is bound to avoid unwarranted sentencing disparities, and sentencing Mr. Sughroue to a term of imprisonment of greater than 87 months would certainly create a disparity between his circumstances and those of other offenders who fall into criminal history category I and have received federal sentences for carjacking at an offense level of 29. A prison sentence of not more than 87 months is more than sufficient, but not

greater than necessary, to serve the goals of sentencing in this case.

The Defense is confident that the Court's clear eye toward justice, which it has unflinchingly championed on multiple occasions, will permit it to disregard outside influences and guide it toward the appropriate sentence in this matter.

## **CONCLUSION**

Application of the 18 U.S.C. § 3353(a) factors and policies reflected in the Sentencing Guidelines, along with the unique circumstances of this case, dictate that a sentence of not more than 87 months' imprisonment, less time he has already served in custody—or, in the alternative, a downward variance to a sentence of not more than 75 months of imprisonment—and a period of supervised release would be sufficient, but not greater than necessary, to accomplish the goals of sentencing with respect to Mr. Sughroue. Mr. Sughroue, therefore, respectfully requests that this Court sentence him accordingly and recommend that the Bureau of Prisons designate him to FCI Englewood in Littleton, Colorado.

Respectfully submitted,

**HALBERG CRIMINAL DEFENSE**

Dated: April 30, 2025

*/s/ Christina Zauhar*
Christina Zauhar, No. 393503
Attorney for Defendant
7900 Xerxes Ave. S., Ste. 1700
Bloomington, MN 55431
(612) 333-3673

Dated: April 30, 2025

*/s/ Eric J. Nelson*
Eric J. Nelson, No. 308808
Attorney for Defendant
7900 Xerxes Ave. S., Ste. 1700
Bloomington, MN 55431
(612) 333-3673